UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:        BRUCE BERNARD NOLTE,                    Case No. 14-36676-KRH
                                                      Chapter 11
            Debtor.

## MEMORANDUM OPINION

Before the Court is the Debtor's Motion to Dismiss the Objection to the Debtor's Claimed Exemptions (the "Motion to Dismiss"). The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

Bruce Bernard Nolte (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code[1] on December 16, 2014. The Debtor filed his schedules, including Schedule C, Property Claimed as Exempt, on December 29, 2014. Subsequently, on January 29, 2015 the Debtor filed an Amended Schedule C. On March 2, 2015, MT Technology Enterprises, LLC ("MT") filed an Objection to the Debtor's Claimed Exemptions (the "Exemptions Objection"). The Debtor filed his Motion to Dismiss and Memorandum in Support on March 16, 2015, on the grounds that the Exemptions Objection failed to state the relief sought with the particularity required by Rule 9013 of the Federal Rules of Bankruptcy Procedure. On March 31, 2015, MT filed a Memorandum in Opposition to the Debtor's Motion to Dismiss.

---

[1] 11 U.S.C. §§ 1101–1174. All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq.*

The Court conducted an evidentiary hearing on the Exemptions Objection and the Motion to Dismiss on April 2, 2015 (the "Hearing"). At the conclusion of the Hearing, the Court overruled MT's Exemptions Objection with the sole exception of a Rollover IRA—Account No. 5253 held by Middleburg Trust Company, 821 East Main Street, Richmond VA 23219 (the "IRA Account"). The Court took under advisement whether a "prohibited transaction" as defined by 26 U.S.C. § 4975 had occurred with respect to the IRA Account that transformed it into property of the estate and caused the IRA Account to no longer be subject to exemption under 11 U.S.C. § 522(b)(3)(C). The Court permitted the parties to further supplement the record by April 16, 2015, in order to address issues specific to the alleged prohibited transaction. *See* Order (A) Granting in Part Motion to Dismiss Objection to Exemptions on the Basis that it Fails to State with Particularity the Grounds for Relief Sought and Allow Exemptions and (B) Taking Additional Items Under Advisement, April 28, 2015, ECF No. 69. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure with respect to the remaining issue under advisement.[2]

In October of 2005, the Debtor opened the IRA Account as a rollover account with Davenport Trust Company ("Davenport"). The IRA Account was a "managed account" giving Davenport discretion to invest the assets held in the IRA Account. In 2007, the Debtor requested that Davenport invest a portion of the holdings in the IRA Account in an entity known as Cristol, LLC ("Cristol"). Davenport invested $100,000 in Cristol, which gave the IRA Account a five percent ownership interest in Cristol as of the end of Cristol's first round of equity financing (the "Cristol Transaction"). The ownership interest of the IRA Account in Cristol never exceeded

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. Fed. R. Bankr. P. 7052.

that five percent threshold at any time thereafter. In late-December 2007 the Board of Managers of Cristol adopted a resolution adding the Debtor as a member of Cristol's Board effective January 15, 2008. The Debtor received no compensation for serving as a member on Cristol's Board. Cristol ceased operations in 2009. The Debtor resigned from Cristol's Board the same year. In May 2014, the Debtor rolled over the IRA Account from Davenport to the Middleburg Trust Company, where the IRA Account remains. The IRA Account continues to hold the valueless shares of Cristol.

Ronald Trice ("Trice"), President of MT, testified at the Hearing that he had served as the corporate secretary of Cristol. Through his service at Cristol, Trice learned about the Cristol Transaction and the Debtor's involvement with Cristol. Trice testified that he believed the Debtor had used the IRA Account to engage in various prohibited transactions. Trice failed to identify, however, any specific transaction prohibited by 26 U.S.C. § 4975. Nor did Trice set forth facts or other circumstances sufficient to establish that a prohibited transaction had occurred. As a result of the very general but serious allegations in Trice's testimony, the Court took this matter under advisement and allowed the parties an opportunity to supplement the record in order to address specifically whether the Cristol Transaction was in fact a prohibited transaction under 26 U.S.C. § 4975, and, if so, whether this transaction might have an impact on the Debtor's ability to claim the IRA Account as exempt under 11 U.S.C. § 522(b)(3)(C).

Virginia Code section 34-34 provides that "the interest of an individual under a retirement plan shall be exempt from creditor process to the same extent permitted under federal bankruptcy law for such a plan." Va. Code Ann. § 34-34(B). Bankruptcy Code § 522(b)(3)(C) further provides that retirement funds are exempt to the extent those funds are exempt from taxation under §§ 401, 403, 408, 408A, 414, 547, or 541 of the Internal Revenue Code.

3

Individual retirement accounts are exempt from taxation under 26 U.S.C. § 408, thus placing the IRA Account within the purview of 11 U.S.C. § 522(b)(3)(C).

Internal Revenue Code § 408(e)(2)(A) provides that:

> If, during any taxable year of the individual for whose benefit any individual retirement account is established, that individual or his beneficiary engages in any transaction prohibited by section 4975 with respect to such account, such account ceases to be an individual retirement account as of the first day of such taxable year.

26 U.S.C. § 408(e)(2)(A). The Court must determine whether the Cristol Transaction constituted a "transaction prohibited by section 4975."[3] Internal Revenue Code § 4975(c)(1) defines prohibited transaction as follows:

> For purposes of this section, the term "prohibited transaction" means any direct or indirect—
> (A) sale or exchange, or leasing, of any property between a plan and a disqualified person;
> (B) lending of money or other extension of credit between a plan and a disqualified person;
> (C) furnishing of goods, services, or facilities between a plan and a disqualified person;
> (D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;
> (E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interests or for his own account; or
> (F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

26 U.S.C. § 4975(c)(1).

The Court finds that the Debtor's purchase of a five percent membership interest in Cristol through his IRA Account is not a prohibited transaction under the Tax Code. Internal Revenue Code § 4975(e)(2) provides a definition of "disqualified person," which includes a

---

[3] IRAs provide valuable tax-deferral benefits in order to entice retirement savings. The Tax Code discourages the use of IRAs for purposes other than retirement. The Tax Code defines such improper uses as "prohibited transactions."

fiduciary of the IRA. While not directly included in the definition of "disqualified person" the I.R.S. has taken the position that the owner of the IRA is also a disqualified person. *See* I.R.S. P.L.R. 8849001 (Aug. 30, 1988).

Subsections (A), (B), (C), and (F) of Internal Revenue Code § 4975(c)(1) are not applicable to the case at bar. Subsections (A) through (C) do not apply, as there is no allegation that the Cristol Transaction involved an exchange of property, extension of credit, or furnishing of goods, services, or facilities between the Debtor and the IRA Account. Subsection (F) is inapplicable because there is no suggestion that the Debtor received consideration "for his own personal account by any disqualified person who is a fiduciary from any party dealing with the" IRA Account in connection with the Cristol Transaction. MT has not alleged any facts sufficient to satisfy subsection (D), as the Court has not heard or seen evidence that there was a transfer of income or assets from the IRA Account to the Debtor. The only issue is whether the Debtor transferred, used, or acted in his capacity as a fiduciary[4] for his own benefit, in his own interests, or for his own account. Again, there are no facts that establish evidence that this occurred. There is simply no suggestion that the Debtor used the assets of the IRA Account for his own benefit other than as the IRA Account beneficiary.

---

[4] Internal Revenue Code § 4975(e)(3) defines "fiduciary" broadly as any person who:

> (A) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
> (B) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
> (C) has any discretionary authority or discretionary responsibility in the administration of such plan.

26 U.S.C. § 4975(e)(3). Although Davenport was named as the IRA Account investment fiduciary, the definition of fiduciary employed by the Tax Code is a functional one. As the Debtor directed Davenport to purchase the interest in Cristol, the Debtor was acting as a fiduciary as that term is defined by the Internal Revenue Code.

The factual predicate before the Court is that the Debtor used funds from the IRA Account to engage in the Cristol Transaction. In IRS Private Letter Ruling 8009091, the IRS stated that a corporate director purchasing five percent of the corporation's stock though the use of the director's IRA "does not, by itself, constitute a prohibited transaction. . . ." I.R.S. P.L.R. 8009091 (Dec. 7, 1979). Because the use of IRA assets by a director to purchase a minority ownership interest in a corporation "does not, by itself, constitute a prohibited transaction" the Court finds that the Cristol Transaction does not constitute a prohibited transaction under 26 U.S.C. § 4975(c)(1).

Congress intended when it enacted Bankruptcy Code § 522(b)(3)(C) "to expand the protection for tax-favored retirement plans or arrangements that may not be already protected under Bankruptcy Code section 541(c)(2) pursuant to *Patterson v. Shumate*, or other state or Federal Law." H.R. Rep. No. 109-31(I), at 63–64 (2005) (citing *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242 (1992)) (internal footnote omitted). Consistent with this espoused purpose, § 522(b)(4)(B) of the Bankruptcy Code provides that:

> (B) If the retirement funds are in a retirement fund that has not received a favorable determination under such section 7805, those funds are exempt from the estate if the debtor demonstrates that—
> (i) no prior determination to the contrary has been made by a court or the Internal Revenue Service; and
> (ii) (I) the retirement fund is in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986; or
> (II) the retirement fund fails to be in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986 and the debtor is not materially responsible for that failure.

11 U.S.C. § 522(b)(4)(B). The Debtor opened his IRA Account as a rollover IRA with Davenport in October 2005. At no point since its inception has the IRS disqualified the IRA Account or made any other determination that the IRA Account is not in substantial compliance with applicable law. Congress has expressed a preference favoring deference to retirement

accounts that are in compliance with the requirements of the Internal Revenue Code. As the IRA Account is in substantial compliance with the relevant Tax Code provisions that render it immune from taxation, due deference dictates that it be treated as exempt under § 522(b)(3)(C) of the Bankruptcy Code. Accordingly, the Debtor's exemption claimed in his IRA Account will be allowed.

A separate order shall issue.

ENTERED: __May 5 2015__

/s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: May 5 2015